IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| YVONNE MICHELLE KEMP ) | |
| ) | |
| v. ) | No. 3:19-0431 |
| ) | |
| ANDREW M. SAUL ) | |
|     Commissioner of ) | |
|     Social Security ) | |

**To:** The Honorable Eli J. Richardson, District Judge

## REPORT AND RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner" or "Defendant") denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") as provided under Titles II and XVI, respectively, of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket Entry ("DE") 14), to which Defendant has filed a response. (DE 16.) This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for initial consideration and a Report and Recommendation. (DE 4.)

Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion (DE 14) be **DENIED**.

## I. INTRODUCTION

Plaintiff filed applications for DIB and SSI on July 14, 2016. (Transcript of the Administrative Record (DE 10) at 68, 98.)[1] She alleged a disability onset date of October 14, 2015 and asserted that she was unable to work because of problems with her back, hands, and feet, arthritis, acid reflux, migraines, fibromyalgia, and mental health conditions. (AR 68, 98-99.) Plaintiff's applications were denied initially and upon reconsideration. (AR 68, 98, 145-46.) Pursuant to her request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared with counsel and testified at a hearing before ALJ Scott Shimer on February 22, 2018. (AR 28.) The ALJ denied the claim on July 5, 2018. (AR 9-11.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision on April 25, 2019 (AR 1-3), thereby making the ALJ's decision the final decision of the Commissioner. This civil action was thereafter timely filed and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II. THE ALJ FINDINGS

The ALJ's unfavorable decision included the following enumerated findings based upon the record:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.

2. The claimant has not engaged in substantial gainful activity since October 14, 2015, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: fibromyalgia; cervical degenerative disc disease status post anterior cervical discectomy and fusion at C6-7' headaches; anxiety; bipolar disorder; borderline personality disorder; and substance use disorder (20 CFR 404.1520(c) and 416.920(c)).

---

[1] The Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding page number(s) as numbered in the large black Bates stamps on the bottom right corner of each page.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), as follows: lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk 6 hours in an 8-hour workday; sit 6 hours in an 8-hour workday; occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally reach overhead bilaterally; frequently handle and grasp with the left upper extremity; no working at unprotected heights or around unguarded moving machinery; can understand, remember and apply simply, routine tasks with occasional workplace change; can maintain concentration, persistence, and pace for simple, routine tasks; and can have occasional interaction with the general public, coworkers, and supervisors.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on January 20, 1971 and was 44 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 14, 2015, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(AR 14-22.)

## III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## IV. DISCUSSION AND CONCLUSIONS OF LAW

### A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). If substantial evidence supports the ALJ's decision, that decision must be affirmed "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). In other words:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).

The Commissioner utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a). If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed

4

further. *Id*. § 404.1520(a)(4). At step one, the claimant must show that she is not engaged in "substantial gainful activity" at the time disability benefits are sought; at step two, the ALJ considers whether one or more of the claimant's alleged impairments are "severe" in nature; at step three, the ALJ determines whether the impairments at issue meet or equal one of the Listings contained in the regulatory List of Impairments; at step four, the ALJ considers the claimant's residual functional capacity ("RFC") and determines whether the claimant can still perform past relevant work; at step five, the burden of proof shifts to the ALJ to assess whether the claimant, after establishing that past relevant work is no longer possible, is capable of performing other types of work. *Id*.

If the ALJ determines at step four that the claimant can perform past relevant work, the claimant is "not disabled" and the ALJ need not complete the remaining steps of the sequential analysis. *Id*. § 404.1520(a)(4)(iv). "Past relevant work" is defined as "substantial gainful activity" that a claimant has done within the past 15 years and that lasted long enough for the claimant to learn to do it. *Id.* § 404.1560(b)(1). If the claimant is unable to perform past relevant work, however, the ALJ proceeds to step five to determine whether, in light of the claimant's RFC, age, education, and work experience, the claimant can perform other substantial gainful employment and whether such employment exists in significant numbers in the national economy. *Id*. § 404.1520(a)(v). In evaluating a claimant's RFC, the ALJ must consider the combined effect of all of the claimant's impairments, mental and physical, severe and nonsevere. 42 U.S.C. §§ 423(d)(2)(B), (5)(B).

The Court's review of the Commissioner's decision is limited to the record made during the administrative hearing process. *Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). A reviewing court is not permitted to try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)

(*Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court is required to accept the ALJ's explicit findings and ultimate determination unless the record as a whole is without substantial evidence to support the ALJ's determination. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984) (citing 42 U.S.C. § 405(g)).

### B. The ALJ's Five-Step Evaluation of Plaintiff

In the instant case, the ALJ resolved the Plaintiff's claim at step five of the five-step process. The ALJ found that Plaintiff met the first two steps, but found at step three that Plaintiff was not presumptively disabled because she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff was unable to perform past relevant work. At step five, the ALJ determined that Plaintiff's RFC allowed her to perform light work with express limitations to account for her severe impairments, and that considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (AR 14-22.)

### C. Plaintiff's Assertions of Error

Plaintiff presents two assertions of error: (1) the ALJ erred by failing to consider the testimony of a third-party witness; and (2) the ALJ erred by failing to incorporate all of the limitations recommended in an opinion to which he gave "great weight." (DE 15 at 2-5.) Plaintiff therefore requests that this case be reversed and/or remanded pursuant to sentence four of 42 U.S.C. § 405(g) for additional consideration. (*Id.* at 14-15.)

Sentence four of 42 U.S.C. § 405(g) states the following:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

If the case contains an adequate record, "the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). The Court addresses Plaintiff's assertions of error below.

### 1. Third-Party Witness Testimony.

Plaintiff contends that the ALJ violated Social Security Ruling ("SSR") 06-03p by ignoring the testimony provided by Plaintiff's mother, Pat Nixon, during the administrative hearing. Plaintiff points to the ALJ's sole reference to such testimony in the administrative opinion, in which the ALJ noted that "[t]he claimant and her mother testified that she is slow to get moving each morning and that she has to do chores at her own pace" (AR 17), as proof that the ALJ failed to properly consider this testimony in formulating Plaintiff's RFC. (DE 15 at 10-13.)

SSR 06-03p explains, in relevant part, the ALJ's duty in evaluating opinions from individuals who are not considered "acceptable medical sources" as defined in 20 C.F.R. § 404.1502(a):

> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

SSR 06-03p, 2006 WL 2329939, *1 (August 9, 2006).

7

Defendant responds to Plaintiff's assertion by arguing that SSR 06-03p does not apply to the instant matter since the regulation was rescinded as of March 27, 2017 and ALJ's decision was rendered on July 5, 2018. Defendant notes that although the Commissioner initially announced that rescission would apply to "claims filed on or after March 27, 2017," *see* 82 FR 15263-01, which would not appear to impact Plaintiff's July 14, 2016 application, the Commissioner later corrected this notice to reflect that the "effective date" of rescission of SSR 06-03p was March 27, 2017, *see* 82 FR 16869-02, which Defendant contends would make the regulation inapplicable to the ALJ's determination.

The Court is not persuaded by such reasoning, particularly given that numerous district courts in the Sixth Circuit, including this one, have held that the Commissioner's rescission of SSR 06-03p applies only to disability claims filed on or after March 27, 2017. *See, e.g., Dougherty v. Saul*, No. 2:18-cv-189, 2020 WL 1151275, at *3, n.3 (E.D. Tenn. Mar. 9, 2020); *Oliver v. Saul*, No. 1:19-cv-00034-LLK, 2019 WL 6329349, at *4, n.7 (W.D. Ky. Nov. 26, 2019); *King v. Saul*, No. 5:18-cv-1283, 2019 WL 8750285, at *8, n.6 (N.D. Ohio Oct. 31, 2019), *report and recommendation adopted,* 2020 WL 1025170 (N.D. Ohio Mar. 3, 2020); *Ashmore v. Berryhill*, No. 1:17-cv-0100, 2019 WL 1198889, at *3 (M.D. Tenn. Mar. 14, 2019). This approach is in line with our historically negative view of retroactive implementation of laws. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("Retroactivity is not favored in the law. Thus … administrative rules will not be construed to have retroactive effect unless their language requires this result.").

Regardless, the Court finds that the ALJ's decision did not violate SSR 06-03p. Plaintiff relies heavily on a case from the Eastern District of Michigan in which the presiding judge determined that an ALJ's failure to consider letters from two of the subject applicant's supervisors

8

indicating that the applicant was unable to hold competitive employment constituted a violation of SSR 06-03p. *See Lohr v. Comm'r of Soc. Sec.*, 559 F. Supp. 2d 784 (E.D. Mich. 2008). There are two important distinctions between *Lohr* and the instant matter, however, the first of which is that the ALJ's opinion in *Lohr* "omit[ted] *any* reference whatsoever" to the supervisors' letters. *Id*. at 792. The court was thus unable to conclude that the ALJ had given any consideration to the third-party evidence. In contrast, Plaintiff here concedes that the ALJ discussed the testimony of her mother in the administrative opinion. (DE 15 at 11.)

Second, the evidence omitted from the administrative opinion in *Lohr* involved the subject applicant's ability to perform his previous work, which the ALJ relied on in denying the plaintiff's application at step four of the evaluation. 559 F. Supp. 2d at 793. The court specifically highlighted the significance of the supervisors' expertise in assessing whether the plaintiff could perform such employment, including one supervisor's 30-year experience at the subject place of employment. *Id*. The district judge concluded that such evidence was indispensable and thus the ALJ's failure to even mention it violated SSR 06-03p. *Id*. at 793-94.

Unlike the ALJ in *Lohr*, the ALJ in the instant matter referenced the relevant third-party testimony and discussed the pertinent aspects of such testimony in compliance with SSR 06-03p. (AR 17.) The Court notes that Ms. Nixon's testimony was extremely limited and commented only generally about Plaintiff's condition. (AR 55-57.) Plaintiff faults the ALJ for failing to specifically cite Ms. Nixon's broad statements that Plaintiff "stays in her bedroom a whole lot" (AR 56), but this does not mean that the ALJ disregarded such evidence. *See Adams v. Comm'r of Soc. Sec.*, No. 4:13-cv-22, 2014 WL 3368692, at *11 (E.D. Tenn. July 9, 2014) ("[T]here is a difference between what an ALJ must consider and what an ALJ must discuss in a written opinion.") (quoting *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547-48 (6th Cir. 2002)). The ALJ instead

9

provided ample analysis of Plaintiff's mental condition and the resultant impact on her functionality, including discussion of a third-party function report completed by Ms. Nixon (AR 20), which actually provides a more thorough account of Ms. Nixon's opinion of the limitations purportedly caused by her daughter's condition. (AR 284-91.) The Court thus finds no violation of SSR 06-03p and concludes that substantial evidence supports the ALJ's decision.[2]

**2. The ALJ's Consideration of Opinion Evidence.**

Plaintiff next argues that the ALJ erred at step five of his evaluation by failing to incorporate into the RFC formulation all of the limitations recommended by a state agency physician whose opinion was accorded "great weight." (DE 15 at 13.) Plaintiff points to the opinion of Dr. Michael Hammonds, who completed a mental RFC assessment on April 24, 2017 after reviewing Plaintiff's medical records. Although Dr. Hammonds concluded that Plaintiff was either "not significantly limited" or demonstrated "no evidence of limitation" in the vast majority of mental areas examined, he found that Plaintiff was "moderately limited" in her ability to interact appropriately with the general public and accept instructions and respond appropriately to criticism from supervisors. (AR 118-20.) Dr. Hammonds additionally found that any supervision of Plaintiff should be "direct and nonconfrontational." (AR 119.) Plaintiff submits that this latter limitation was improperly excluded from the RFC. The Court disagrees.

First, the RFC formulation is based on the testimony provided by a vocational expert during the administrative hearing in response to hypothetical questions posed by the ALJ regarding the limiting effects of Plaintiff's impairments. (AR 17, 58-66.) Contrary to Plaintiff's assertion otherwise, there is no requirement that the ALJ include all of the restrictions prescribed by a medical source whose opinion is viewed favorably. *See Bartyzel v. Comm'r of Soc. Sec.*, 74 F.

---

[2] Because there was no violation of SSR 06-03p, the Court need not address Plaintiff's additional argument that the ALJ's alleged error was not harmless. (DE 15 at 12-13.)

10

App'x 515, 524 (6th Cir. 2003) ("In fashioning the hypothetical question to be posed to the vocational expert, the ALJ is required to incorporate only those limitations accepted as credible by the finder of fact.") (internal citation and quotations omitted). This applies even to opinions accorded "great weight" by an ALJ. *See Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale.").

Second, it is not clear that Dr. Hammonds' statement regarding Plaintiff's supervision represents a prescribed functional limitation that can be included in the RFC. The statement is part of the "additional explanation" portion of a state agency RFC form and is immediately preceded by a declaration that, in contrast, specifically delineates a functional restriction: "[Plaintiff] is capable of casual and infrequent contact that would be required to answer questions and provide service that was not persistent." (AR 119.) At least one district court has held that a statement that an individual's supervision "*should* be direct and nonconfrontational" represents a "recommendation, not a specific functional limitation." *James B. v. Berryhill*, No. 17-CV-06794-TSH, 2019 WL 1275344, at *14 (N.D. Cal. Mar. 20, 2019) (finding substantial evidence supported ALJ's opinion that accorded considerable weight to state consultant's evaluation but omitted the "should be direct and nonconfrontational" portion of the evaluation from the RFC) (emphasis in original).

Moreover, Plaintiff incorrectly claims that the vocational expert testified that an individual with a direct and nonconfrontational supervision requirement would be limited to "sheltered work" (DE 15 at 14), which, pursuant to SSR 69-60, would not constitute "employment" as defined by the Social Security Act and therefore, according to Plaintiff, would necessitate a finding of

11

disability. (DE 15 at 14).³ This is a reductive mischaracterization of the vocational expert's testimony, which instead included the following vacillation in response to a debate between the ALJ and Plaintiff's counsel regarding the feasibility of a "direct and nonconfrontational" supervision limitation:

> [I]f a person were not able to handle even constructive supervision, then we're talking about no work. If it's surface supervision with very non-confrontational mannerisms, then we're talking sheltered work jobs. Otherwise, I could not possibly know whether or not a supervisor would be confrontational or a bully or whatever. I'd say there's plenty of them out there, but there would certainly [be] plenty of them out there that are not. The [ALJ] is right, I can't possibly answer that question and, you're right, it does sound like the person needs a sheltered workshop.

(AR 65.) This ambiguous answer does not in any way endorse the conclusion that the particular limitation described by Dr. Hammonds restricts an individual to sheltered work. Accordingly, even if the Court were to adopt Plaintiff's argument, there is nothing to suggest that reversal of the ALJ.'s findings with respect to Dr. Hammonds' opinion would change the ultimate decision. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result.") (internal citation omitted).

Furthermore, Defendant correctly notes that the ALJ was unequivocal during the administrative hearing that he did not give credence to Dr. Hammonds' "direct and nonconfrontational" limitation. (AR 63-65.) This is bolstered by the ALJ's decision to accord great

---

³ Plaintiff quotes the following portion of the regulation: "Where a handicapped individual performs simple services and receives token remuneration during a sheltered workshop rehabilitation program *held*, such services are not performed as an employee in employment as defined in section 210(j) (2) of the Social Security Act. *Further held*, services performed in the workshop by an individual after he has completed the rehabilitation program of the workshop constitute services as an employee in employment as defined in section 210(j) (2) of the Social Security Act, even though he is unable to obtain regular employment outside." SSR 69-60, 1969 WL 4854, at *1 (January 1, 1969) (emphasis in original).

12

weight to the opinion of state consultant Dr. Theren Womack, who reviewed Plaintiff's records before concluding that Plaintiff could "sustain appropriate interaction with the public, coworkers, and supervisors." (AR 19, 83). The ALJ's omission of the "direct and nonconfrontational" notation from the RFC is also consistent with his finding elsewhere in the opinion that Plaintiff's ability to interact with others was only "moderately" impaired. (AR 16.) The Court thus finds no error in the ALJ's step five analysis.

As long as an ALJ's decision is supported by substantial evidence, "reversal would not be warranted even if substantial evidence would support the opposite conclusion." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citing *Longworth v. Comm'r of Soc. Sec.,* 402 F.3d 591, 595 (6th Cir.2005)). Counsel for Plaintiff presented to the vocational expert what he himself described as a "weird" hypothetical (AR 63) based on Dr. Hammonds' ambiguous notation, which, following significant discussion between counsel and the ALJ regarding the problematic nature of such a notation, was effectively deemed incongruent with Agency framework. The ALJ therefore appropriately excluded the notation from the RFC. Because the ALJ in this case appropriately discussed the medical and non-medical evidence of record and adopted only those limitations he found to be legitimate, *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)), the Court finds that substantial evidence supports the ALJ's RFC.

## V. RECOMMENDATION

For the above stated reasons, it is respectfully recommended that Plaintiff's motion for judgment on the administrative record (DE 14) be DENIED and the Commissioner's decision be AFFIRMED.

ANY OBJECTIONS to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(a). Failure to file specific written objections within the specified time can be deemed to be a waiver of the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004) (*en banc*). Any responses to objections to this Report and Recommendation must be filed within fourteen (14) days of the filing of the objections. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(b).

        Respectfully submitted,

        _____
        BARBARA D. HOLMES
        United States Magistrate Judge